WILDING et al. v. CITY OF SAN ANTONIO et al.

(Circuit Court of Appeals, Fifth Circuit. May 19, 1896.)

No. 489.

EQUITABLE LIEN—CONTRACT.

The city of A., being authorized to issue $500,000 of bonds, to provide a sewerage system, of which $100,000 had been sold, and the cash received, made a contract with W. for the construction of the gathering part of the system, which, upon the estimates made by the city engineers of the quantities of different kinds of work to be done, at the prices fixed, amounted to $331,209.45. The contractor subsequently filed a bill, alleging that the quantities of work to be done so varied from the estimates that the cost, instead of amounting to only $331,209.45, would consume all that was available of the sewer fund on hand, claiming an equitable lien on the

whole fund for his payment, and praying that the city be enjoined from making a contract for an outfall system, and setting aside a portion of the fund to pay for it. The contract with W., which was made when only $100,000 of the bonds had been sold, provided that only so much work as that sum would pay for should be done, until more bonds had been sold, and, as additional sums of $50,000 were received, the contract should be carried on, until such sums were absorbed, or the contract completed. *Held*, that this provision, in view of the known circumstances at the time and the amount of the estimate, must have been intended to limit the sums to be absorbed to $331,209.45, and did not give W. a lien on the whole fund.

Appeal from the Circuit Court of the United States for the Western District of Texas.

Oscar Bergstrom and William Aubrey, for appellants.

T. H. Franklin, R. B. Minor, and T. D. Cobbs, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and SPEER, District Judge.

McCORMICK, Circuit Judge. This is an appeal from an interlocutory order or decree refusing an application for a writ of injunction. The city of San Antonio was duly authorized to issue her bonds to the amount of $500,000 to raise a fund to provide a sewerage system. She had sold one-fifth of these bonds, and had in her treasury, of the proceeds of this sale, $100,000. She had employed a skilled sanitary engineer to devise a system of sewerage best adapted to her areas and topography, and within the limit of her authorized fund. The scheme he proposed embraced a gathering system, and suggested several provisions for an outfall or disposal of the sewage. When she had adopted a plan only for the gathering system, of which the specifications and estimates were carefully made, she solicited bids for this work, and on January 2, 1895, the bid of J. B. Hindry for $331,209.45 was accepted, and on the 14th day of the same month the city made a contract in writing with him, which on the 8th July, 1895, was, with the consent and express approval of the city, assigned and transferred by Hindry to J. W. Wilding, L. A. Marshall, V. M. Backus, and W. R. Hines, composing the firm of Wilding, Marshall, Backus & Hines, the appellants. By this contract the appellants bound themselves to do all the work and furnish all the materials which "may be required for the construction of sewers and appurtenances in accordance with the specifications herein contained, and in accordance with the plans and directions made and to be made from time to time as the work proceeds." At the time this contract was let, a careful estimate had been made of the work necessary to be done for its completion, and of the cost at the prices specified, according to which estimate the cost was found to be the sum of $331,209.45, the amount of Hindry's accepted bid. About one-third of the work has been done. The contractors have received from time to time 85 per cent. of the contract price of the work done as estimated by the city engineer as the work progressed. A substantial disagreement as to the proper construction of the clauses of the contract classifying the excavations has arisen between the parties, on which rests a vital issue in the bill exhibited

by the appellants in the circuit court.    This issue is pivotal in the pleadings and affidavits of the parties and in arguments of their counsel.    Touching it we have carefully examined the record and the briefs, and duly considered the earnest and able oral arguments submitted by counsel, but we do not find it necessary to decide this issue on this appeal, and therefore express no opinion on it.    The appellants contend that the adopted scheme for a sewerage system, on which their contract was let, embraced only the gathering plant and contemplated crude disposal of the sewage by discharge into the San Antonio river; that the work already done shows that the original estimate of cost was so far defective that, instead of the work let to them amounting in cost to only $331,209.45, it will, at the contract prices, consume all that is available of the sewer fund on hand; that this is the only fund to which the contractors can look, or out of which the city can pay them; that by their contract they have an equitable lien on this fund, and the city is bound to hold it all for their payment.    On March 3, 1896, the city adopted an ordinance providing:

"Section 1. That the city treasurer be and is hereby directed to make the following transfers from the sewer fund: Charge sewer fund and credit Wilding, Marshall, Backus & Hines sewer contract account $331,209.45. Charge sewer fund and credit Katz, Crandall & Katz out-fall sewer contract account $98,585.13.

"Sec. 2. That the city treasurer charge Wilding, Marshall, Backus & Hines sewer contract account all payments made Wilding, Marshall, Backus & Hines up to date and credit the amount to sewer fund.

"Sec. 3. That in future no warrants shall be drawn on either Wilding, Marshall, Backus & Hines sewer contract account, or Katz, Crandall & Katz out-fall sewer contract account except for work performed by the respective contractors under their contracts."

The next day—March 4th—the outfall contract in writing was duly signed by the parties thereto, and on the 17th of March the appellants exhibited their bill in the circuit court, embracing much matter not necessary to be considered now, and claiming an equitable lien on the whole of the fund, which the court was asked to protect from the threatened waste by the process of injunction.    The city having still on hand in cash of the sewer fund an amount more than equal, with the payments already made the appellants, to the sum of $331,209.45, the amount of Hindry's accepted bid for the work embraced in appellants' contract, and having set apart that amount to be used solely in payment for work performed and to be performed by the contractors, it is as yet immaterial whether the appellants have or have not an equitable lien on that amount of the sewer fund, and we therefore withhold our opinion on that subject.    Have the appellants such an equitable lien on the whole of the sewer fund as will require or authorize a court of chancery to enjoin the city from making such disposition of the excess (over $331,209.45) as the legal representatives of the city, in the exercise in good faith of their legal discretion, deem best calculated to secure the object for which the fund was provided?    We think they have not shown such an equity. The contract provides:

"It is also mutually agreed by the city of San Antonio, the party of the first part, and the contractor, that, inasmuch as there is at this time only one

hundred thousand ($100,000.00) dollars in the treasury of the city of San Antonio realized from the sale of the sewer bonds for the purpose of building and constructing said sewers, that only so much of the work specified and mentioned in this contract shall be done as will absorb the amount in the treasury at this time; conditioned, however, that as soon as any amount not less than fifty thousand (50,000.00) dollars is realized from the remainder of said bonds and deposited in the city treasury, that then this contract shall be carried on until such sum or sums are absorbed, or said contract is fully carried out and completed, as hereinbefore contemplated and set out."

Viewing this provision in the light of the undisputed fact that at the time of making this contract both of the parties thereto had in mind the amount of the then estimated costs, which was also the amount of Hindry's bid, it is reasonable to conclude that the limit of the sum or sums to be absorbed was $331,209.45. The contention of the appellants is that the plans and specifications covered the whole area of the four districts into which the consulting engineer divided the surface of the city, calling for about 73 miles of sewer of specified dimensions and price for materials and work, which the contractor was bound to do and furnish, and the city was bound to receive if well done, and pay for at the contract price. It was estimated that there would be not more than 100 cubic yards of hard rock excavation, to be paid for at the price of $3 per yard, but the appellants claim that they have already made excavations that should be classed as hard rock excavations to the value at the contract price for that class of $117,095.69, and they have reason to believe that the same disproportion will obtain throughout the two-thirds of the projected work yet to be performed. It would strain the bias of interest or of advocacy to seriously suggest that this result was in the contemplation of either of the parties when this contract was made, in January, 1895. The order or decree of the circuit court refusing the application for a preliminary injunction is affirmed.